# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF IOWA
## CEDAR RAPIDS DIVISION

| | |
|---|---|
| ESTATE OF LAWRENCE HANDORF, by and through its administrator Melissa Barger, BLACKOAK LIFE LIMITED, AS GP FOR BLACKOAK INVESTORS LP, and PHT HOLDING II LP, on behalf of themselves and all others similarly situated,<br><br>  Plaintiffs,<br><br> v.<br><br>TRANSAMERICA LIFE INSURANCE COMPANY,<br><br>  Defendant. | CASE NO. 1:23-cv-32-CJW-MAR |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNRESISTED MOTION FOR PRELIMINARY APPROVAL AND CLASS CERTIFICATION

# TABLE OF CONTENTS

I. INTRODUCTION.................................................................................................................1

II. BACKGROUND ..................................................................................................................3

    A. Plaintiffs Challenge the 2022/23 MDR Increases.....................................................3

    B. Plaintiffs Engage in Nearly Four Years of Litigation................................................3

    C. Settlement Negotiations .............................................................................................5

    D. The Settlement Agreement ........................................................................................6

        1. The Settlement Class.......................................................................................6

        2. Consideration .................................................................................................6

        3. Payments and Release.....................................................................................7

        4. Awards, Costs, and Fees ................................................................................7

        5. Notice and Plan of Allocation........................................................................8

III. ARGUMENT.......................................................................................................................9

    A. The Proposed Settlement Warrants Preliminary Approval.......................................9

        1. Legal Standard ...............................................................................................9

        2. The Settlement Is Procedurally Fair ............................................................10

        3. The Settlement Is Substantively Fair ...........................................................11

    B. The Settlement Class Should Be Certified...............................................................17

    C. The Proposed Form and Manner of Notice Is Appropriate .....................................19

    D. Proposed Schedule...................................................................................................20

IV. CONCLUSION .................................................................................................................20

i

**Page(s)**

**Cases**

*37 Besen Parkway, LLC v. John Hancock Life Ins. Co.*,
Case No. 15-CV-09924 (S.D.N.Y. Mar. 18, 2019) ...........................................................2, 14

*Allen v. Similasan Corp.*,
2017 WL 1346404 (S.D. Cal. Apr. 12, 2017)........................................................................18

*Amchem Prod., Inc. v. Windsor*,
521 U.S. 591 (1997)..............................................................................................................19

*Beaver Cnty. Employees' Ret. Fund v. Tile Shop Holdings, Inc.*,
2017 WL 2574005 (D. Minn. June 14, 2017).....................................................................9, 14

*Carroll v. Flexsteel Indus., Inc.*,
2022 WL 4002313 (N.D. Iowa Sept. 1, 2022)....................................................................17, 20

*Cook v. Gov't Emps. Ins. Co.*,
2020 WL 14087606 (M.D. Fla. June 22, 2020).....................................................................18

*DeBoer v. Mellon Mortg. Co.*,
64 F.3d 1171 (8th Cir. 1995) ................................................................................................15

*Edwards v. Orchestrate Hosp. Grp., L.L.C.*,
2017 WL 2423792 (S.D. Iowa Feb. 23, 2017)......................................................................19

*Fleischer v. Phoenix Life Ins. Co.*,
2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015)......................................................13, 14, 15, 17

*Grove v. Principal Mutual Life Ins. Co.*,
200 F.R.D. 434 (S.D. Iowa 2001) ........................................................................................10

*Grunin v. Int'l House of Pancakes*,
513 F.2d 114 (8th Cir. 1975) ..............................................................................................9, 19

*Handorf, et al. v. Milliman, Inc.*,
Case No. 1:24-mc-00002-CJW-MAR (N.D. Iowa 2024) .........................................................4

*Huyer v. Buckley*,
849 F.3d 395 (8th Cir. 2017) ................................................................................................16

*Huyer v. Wells Fargo & Co.*,
314 F.R.D. 621 (S.D. Iowa 2016) .........................................................................................16

*In re Pork Antitrust Litig.*,
2022 WL 22861435 (D. Minn. Nov. 9, 2022) ........................................................................10

*In re Resideo Techs., Inc., Secs. Litig.*,
2022 WL 872909 (D. Minn. Mar. 24, 2022) ........................................................................16

*In re Uponor, Inc., F1807 Plumbing Fittings Prods. Liab. Litig.*,
2012 WL 2512750 (D. Minn. June 29, 2012)........................................................................19

*In re Wireless Tel. Fed. Cost Recovery Fees Litig.*,
396 F.3d 922 (8th Cir. 2005) ..............................................................................................15

*Keil v. Lopez*,
862 F.3d 685 (8th Cir. 2017) ..............................................................................................14

*Kelly v. Phiten USA, Inc.*,
277 F.R.D. 564 (S.D. Iowa 2011) ..........................................................................9, 10, 13, 15

*Marshall v. Nat'l Football League*,
787 F.3d 502 (8th Cir. 2015) ..........................................................................................12, 17

*Meek v. Kansas City Life Insurance Co.*,
Case No. 19-CV-472 (W.D. Mo. 2019)..................................................................................14

*Meller v. Bank of the W.*,
2018 WL 5305562 (S.D. Iowa Sept. 10, 2018) ......................................................................10

*Petrovic v. Amoco Oil Co.*,
200 F.3d 1140 (8th Cir. 1999) ................................................................................................9

*PHT Holding II LLC v. N. Am. Co. for Life & Health Ins.*,
2023 WL 8522980 (S.D. Iowa Nov. 30, 2023)....................................................10, 13, 14, 16

*Swinton v. SquareTrade, Inc.*,
2019 WL 617791 (S.D. Iowa Feb. 14, 2019).............................................................9, 10, 17

*Swinton v. SquareTrade, Inc.*,
454 F. Supp. 3d 848 (S.D. Iowa 2020) ................................................................................12

*Van Horn v. Trickey*,
840 F.2d 604 (8th Cir. 1988) ..........................................................................................12, 17

*Vogt v. State Farm Life Ins. Co.*,
2021 WL 247958 (W.D. Mo. Jan. 25, 2021) ........................................................................16

*Youth Just. Coalitions v. City of Los Angeles*,
2020 WL 9312377 (C.D. Cal. Nov. 17, 2020)........................................................................18

**Statutes**

Class Action Fairness Act, 28 U.S.C. § 1715 .................................................................................8

**Rules**

Fed. R. Civ. P. 23 ................................................................................................... *passim*

## I.  <u>**INTRODUCTION**</u>

After almost four years of hard-fought litigation that included obtaining class certification, defeating a 23(f) petition and motion for summary judgment, and multiple rounds of negotiations with the assistance of an experienced mediator, Plaintiffs obtained an outstanding settlement on the eve of trial for the Settlement Class. The proposed settlement has three main components:[1]

1.  <u>**Cash**</u>: A $57 million all-cash settlement fund, reduced *pro rata* for any opt-outs. This is *not* a claims-made settlement, no funds will revert to Transamerica, and Settlement Class Members will *not* need to fill out any claim forms. Following final approval, checks will be mailed directly to each Settlement Class Member using the address on file with Transamerica.

2.  <u>**MDR Increase Ban**</u>: Transamerica agrees not to impose any new cost of insurance (COI) rate or monthly deduction rate (MDR) schedule increases on any Settlement Class Policy for five years following the execution of the Settlement Agreement, unless ordered to do so by a state regulatory body.[2] In the event that Transamerica thereafter imposes a new increase, Plaintiffs and the Settlement Class retain all of their rights to challenge that increase.

3.  <u>**Policy Validity Guarantee**</u>: Transamerica agrees not to void, rescind, cancel, or otherwise deny coverage on any Settlement Class Policy on grounds of any alleged lack of insurable interest or misrepresentations made in connection with the original application process.

The cash component of the Settlement, standing alone, is exceptional. It represents more than the alleged Additional MDs that the Settlement Class Members incurred through January 2026, even assuming that the jury had found in favor of Plaintiffs on every disputed question of fact and accepted in full Plaintiffs' damages model and rejected all the reductions for which

---

[1] Unless otherwise noted, capitalized terms mean the same as in the Settlement Agreement, which is attached as Exhibit 2 to the Declaration of Steven G. Sklaver.

[2] The terms "monthly deduction rate" and "cost of insurance rate" are functionally synonymous, with some Policies using the former term and others using the latter. This Memorandum uses these terms interchangeably.

1

Transamerica argued. On a percentage basis, this is better than settlements approved in prior COI class actions. *See, e.g.*, *37 Besen Parkway, LLC v. John Hancock Life Ins. Co.*, Case No. 15-CV-09924 (S.D.N.Y. Mar. 18, 2019) ("*Hancock COI*"), Dkt. 164 at 20:9–10 (approving settlement for 42% of historical COI overcharges, *see id.*, Dkt. 146 ¶ 15, and calling the result "quite extraordinary"). The nonmonetary benefits—for which Plaintiffs will provide an expert valuation as part of the Class Fee and Expense Application—make the result even more exceptional.

Plaintiffs obtained this remarkable result by securing key victories on motions to compel, class certification, and summary judgment, which greatly enhanced the value of the case. This included a summary judgment ruling that rejected Transamerica's positions on critical interpretive issues. The Settlement Class never could have obtained this superb recovery without those successes. And those successes were driven by the enormous efforts in this case, such as:

- Plaintiffs took and defended 18 fact depositions and 4 expert depositions;
- Plaintiffs issued 112 requests for production, 17 interrogatories, 176 requests for admission to Defendant, and 9 subpoenas to third parties, while Transamerica issued 148 requests for production and 35 interrogatories;
- Plaintiffs' counsel and experts analyzed over 371,525 pages produced by Transamerica and third parties, including hundreds of complex pricing models, thousands of actuarial memoranda and spreadsheets, and extensive internal and external emails;
- The parties produced 15 expert reports that totaled more than 900 pages, plus voluminous tables and appendices totaling thousands of additional pages; and
- Plaintiffs won a critical motion to compel against third-party Milliman, Inc., giving Plaintiffs access to important documents showing how Milliman structured Transamerica's 2022/23 MDR Increases.

The Settlement is outstanding when compared to the risks the Settlement Class faced. Transamerica contested virtually every aspect of Plaintiffs' claim—from what the terms of the contracts mean, to whether Transamerica had any duties with respect to changing MDR tables, to the proper redetermination methodology, to whether the Settlement Class Members suffered any monetary damages at all. *See* Dkts. 143, 152. One hotly-disputed factual question was whether an

MDR redetermination that corrected Plaintiffs' identified errors would result in a meaningfully different MDR increase. *See, e.g.*, Dkt. 166 at 19–20. If Transamerica had prevailed on just that one argument, damages would have been reduced to $1.72 million for the previously certified litigation class, a far cry from the recovery under this Settlement.

On preliminary approval, the question is whether the Court "will likely be able to (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). For the reasons below, the proposed Settlement easily meets both criteria.

## II.     BACKGROUND

### A.     Plaintiffs Challenge the 2022/23 MDR Increases

In 2022 and 2023, Transamerica implemented MDR increases on two blocks of universal life insurance policies: (1) the LA UL block, a group of policies that were originally designed in Transamerica's Los Angeles office; and (2) the CR UL block, a group of products that were designed in the carrier's Cedar Rapids office. Plaintiffs collectively own five policies across these two blocks and filed this lawsuit almost four years ago, on October 27, 2022. Dkt. 1.

The Complaint alleged that Transamerica breached the class policies by increasing MDRs in violation of the policy terms. Dkt. 1; *see* Dkt. 102 (Amended Complaint). On December 18, 2024, Plaintiffs filed a motion for class certification. Dkt. 141. On June 3, 2025, the Court certified the proposed classes as defined in the order, appointed Plaintiffs as class representatives, and appointed Susman Godfrey as class counsel. Dkt. 166.

### B.     Plaintiffs Engage in Nearly Four Years of Litigation

Plaintiffs have vigorously prosecuted this case for nearly four years. Fact discovery lasted from January 3, 2023, until May 19, 2025. *See* Dkts. 29, 125; *see also* Sklaver Decl. ¶ 12. The parties exchanged substantial written discovery, as detailed above. *See also* Sklaver Decl. ¶¶ 12–

13. Plaintiffs and Defendant met and conferred numerous times, and engaged in extended negotiations over search terms, custodians, supplementation of interrogatory responses, and other issues. Plaintiffs also issued nine subpoenas to third parties, including Milliman, the third-party consultant who performed the actuarial modeling and calculations underlying the 2022/23 MDR Increases, Transamerica Corporation and Commonwealth General Corporation, PwC, Boston Consulting Group, and various reinsurers. Plaintiff also filed Letters Rogatory to The Hague requesting service of a subpoena requesting documents from Aegon Ltd., Transamerica's ultimate parent who was based in the Netherlands at the time. *Id.* Plaintiffs had to win a motion to compel against Milliman to gain access to important documents showing how Milliman structured Transamerica's 2022/23 MDR Increases. *See Handorf, et al. v. Milliman, Inc.*, Case No. 1:24-mc-00002-CJW-MAR, Dkts. 39, 45 (N.D. Iowa 2024).

As a result of these discovery requests, Plaintiffs and their experts received and analyzed over 371,525 pages produced by Transamerica and third parties, which included extensive actuarial tables, policy-level data reflecting the historical credits and deductions to the account value of all Settlement Class Members' policies, and thousands of complex spreadsheets. *Id.*

Plaintiffs also took and defended 18 fact and 30(b)(6) depositions and four expert depositions, through which Plaintiffs obtained key admissions that they deployed to obtain class certification, defeat a 23(f) petition, and overcome summary judgment. Sklaver Decl. ¶ 15.

Through these extensive discovery efforts, including a successful motion to compel, Plaintiffs uncovered documents key to driving this case to this successful Settlement. These discoveries included: (1) "other products" that allegedly did not "contain express language that limits uniformity provisions to premium classes within a specific product," contrary to Transamerica's litigation position, *see* Dkt. 162 at 23; (2) allegedly "altered or fabricated"

4

Transamerica "pricing assumptions" that Milliman used in its analysis, *id.* at 21; and (3) prior testimony from Transamerica's "actuarial expert" that Plaintiffs contended agreed with their interpretation of the Past Losses Provision, contrary to Transamerica's interpretation in this lawsuit, *id.* at 19.

Expert discovery in this highly technical case was also extensive. To determine the factors that Transamerica used to price the Settlement Class Policies and implement the 2022/23 MDR Increases, Class Counsel and their experts had to analyze documentation and assumptions relating to over 70 products, complex pricing models within two actuarial modeling software packages, extensive communications between Transamerica and Milliman, and thousands of actuarial memoranda, spreadsheets, and tables. Sklaver Decl. ¶¶ 13, 16. Plaintiffs ultimately disclosed two testifying experts: actuarial expert Howard Zail and damages expert Robert Mills. Transamerica also disclosed two experts: actuarial expert Timothy Pfeiffer and damages expert Craig Merrill. Between class certification, merits reports (opening and rebuttal), and supplemental reports, the parties produced 14 expert reports totaling more than 900 pages, not counting thousands of pages of tables and appendices. *Id.* All four experts were deposed. *Id.* ¶ 16.

Plaintiffs defeated Transamerica's motion for partial summary judgment and successfully moved for class certification. Dkts. 142, 143; Sklaver Decl. ¶¶ 17–20. In April 2025, after receiving nearly 135 pages of briefing and hundreds of pages of exhibits and hearing hours of oral argument, the Court denied Transamerica's motion for summary judgment. Dkt. 162. In June 2025, after receiving nearly 90 pages of briefing and hearing hours of oral argument, the Court granted Plaintiffs' motion for class certification. Dkt. 166. Plaintiffs then overcame Transamerica's 23(f) petition to the Eighth Circuit, which challenged class certification on several grounds. Dkt. 171.

**C.** <u>**Settlement Negotiations**</u>

After the Court certified the class and denied summary judgment, the parties held a

5

mediation session with Professor Eric D. Green of Resolutions LLC on July 29, 2025. Before the mediation, the parties submitted lengthy mediation statements, and Plaintiffs provided an updated damages estimate for the Settlement Class. Sklaver Decl. ¶¶ 6–7.

The parties were unable to reach an agreement at that mediation but continued to work through the mediator as trial approached. After extensive negotiations, the parties eventually reached an agreement to resolve the litigation, under the guidance and with the assistance of Mr. Green. *Id*. ¶¶ 5–6. The negotiations that led to the Settlement were hard-fought and conducted at arm's length by highly qualified and experienced counsel. *Id*. ¶¶ 3–9. A long-form Settlement Agreement was subsequently negotiated and agreed to. *Id.* ¶ 5, Ex. 2. These efforts culminated in the proposed Settlement, which Mr. Green believes is "an excellent result." Green Decl. ¶ 11.

**D.** **The Settlement Agreement**

**1.** **The Settlement Class**

The Settlement Class is all persons or entities who presently own or formerly owned a Settlement Class Policy from November 1, 2021, through and including the Final Approval Date. Ex. 2 ¶¶ 64–68. A Settlement Class Policy means a policy issued under the products and business blocks, identified by name in paragraph 68 of the Settlement Agreement, for which Transamerica sent written notice of the 2022/23 MDR Increases. Exclusions from the Settlement Class, such as this Court and Class Counsel, are listed in Paragraph 64 of the Settlement Agreement.

**2.** **Consideration**

The Settlement provides the following primary benefits for the Class.

***Cash***. A $57 million Settlement Fund will be funded for the benefit of the Class. That amount will be proportionally reduced based on the Proportionate MDs through August 31, 2025 of each Policyowner who submits a Request for Exclusion, divided by the total alleged Additional MDs through that same date for all Settlement Class Policies, resulting in the Final Settlement

6

Fund. Ex. 2 ¶¶ 76–78. None of the Final Settlement Fund will revert to Transamerica. *Id.* ¶ 82.

*MDR Increase Moratorium.* For a period of five years following the execution of the Settlement Agreement, Transamerica agrees not to impose any additional MDR schedule increases on any Settlement Class Policy, unless ordered to do so by a state regulatory body. *Id.* ¶ 83.

*Validity Guarantee.* Transamerica also "agrees it will not seek to void, rescind, cancel, have declared void, or otherwise deny coverage of death claims submitted by Settlement Class Members based on any alleged lack of insurable interest or misrepresentations made in connection with the original application process." *Id.* ¶ 84.

### 3. Payments and Release

Upon the Court's Final Approval Order, the Settlement Administrator will directly mail checks to Settlement Class Members with their *pro rata* share of the Net Settlement Fund, according to the Plan of Allocation, using the addresses in Transamerica's files, without requiring claim forms. Sklaver Decl. ¶ 28; Ex. 2 ¶¶ 78–79; Ex. 2, Ex. C ¶¶ 2, 4.

Plaintiffs and Settlement Class Members will release all claims "arising out of or relating to the MDRs or COI rates assessed on the Settlement Class Policies, and including any claims or causes of action that were or could have been alleged in the FAC that are based on the same factual predicate . . ." Ex. 2 ¶ 108. Paragraph 108 of the Settlement Agreement specifies other unreleased claims, such as claims to "enforce the Settlement." *Id.*

### 4. Awards, Costs, and Fees

The Settlement Agreement provides that, subject to Court approval, a portion of the Final Settlement Fund may be used for payment of fees incurred in administering the Settlement, as well as for payment of attorneys' fees and the reimbursement of all expenses incurred or to be incurred. Ex. 2 ¶¶ 44, 61. Plaintiffs will move for a Service Award for up to $25,000 for each Class Representative and attorneys' fees not to exceed one-third (33 1/3%) of the value of the gross

benefits provided to the Settlement Class. Sklaver Decl. ¶ 26; Ex. 2 ¶¶ 117, 120. The Class Fee and Expense Application will be filed before the objection deadline, and Plaintiffs have proposed that the Application be heard at the same time as the Fairness Hearing.

### 5. Notice and Plan of Allocation

Plaintiffs request that the Court appoint Simpluris as Settlement Administrator. The parties propose that, within 45 days of the Court's Preliminary Approval Order, Simpluris will mail a short-form notice to the Class Members' addresses in Transamerica's files, post a copy of a long-form notice to the website it established following class certification, and maintain a toll-free number for Settlement Class Members to obtain information. Kamenir Decl.¶ 15; Sklaver Decl. Ex. 2, Exs. A, B. Settlement Class Members will be notified of the Settlement and the manner and deadline for submitting a Request for Exclusion or Statement of Objection. Sklaver Decl., Ex. 2 § IV, Exs. A, B. The parties propose a 45-day opt-out period. Ex. 2 ¶ 95. Within 10 calendar days of this motion, Transamerica shall serve notices of the proposed Settlement on the appropriate officials in compliance with the Class Action Fairness Act, 28 U.S.C. § 1715. Ex. 2 ¶ 92.

The proposed Plan of Allocation distributes the Settlement Fund equitably and directly to Settlement Class Members on a *pro rata* basis using each Settlement Class Member's share of the Additional MDs, with each Settlement Class Member receiving a minimum payment of $200. Ex. 2, Ex. C. The Additional MDs represent the difference between the MDR charges Transamerica assessed after the 2022/23 MDR Increases and the MDR charges it would have assessed using the pre-increase MDRs, as calculated by Plaintiffs' expert, Robert Mills. Sklaver Decl. ¶ 28.

Settlement Class Members will not need to fill out claim forms. Payment will be sent automatically in the mail, using the addresses that Transamerica maintains in its own files. *Id.*; Ex. 2, Ex. C ¶ 4. The proposed Plan of Allocation also provides for a *pro rata* redistribution, within one year plus thirty days after the date the Settlement Administrator mails the first checks, of any

funds remaining in the Net Settlement Fund to Settlement Class Members who previously cashed the checks they received, subject to the economic and administrative feasibility of making such a redistribution. Sklaver Decl. ¶ 28; Ex. 2, Ex. C ¶ 6.

## III. ARGUMENT

### A. The Proposed Settlement Warrants Preliminary Approval

#### 1. Legal Standard

A class action settlement is subject to approval under Rule 23(e). Approval of a class action settlement "is entrusted 'to the sound discretion' of the district court." *Kelly v. Phiten USA, Inc.*, 277 F.R.D. 564, 570 (S.D. Iowa 2011) (quoting *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123 (8th Cir. 1975)). Although the court must consider the terms of a class action settlement, it "should not substitute [its] own judgment as to optimal settlement terms for the judgment of the litigants and their counsel." *Id.* at 570 (quoting *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148–49 (8th Cir. 1999)). "The policy in federal court of favoring the voluntary resolution of litigation through settlement is particularly strong in the class action context." *Beaver Cnty. Employees' Ret. Fund v. Tile Shop Holdings, Inc.*, 2017 WL 2574005, at *2 (D. Minn. June 14, 2017) (same).

Preliminary approval is a provisional step and requires consideration of whether "following notice to the class and a final fairness hearing, the [c]ourt will likely be able to" grant final approval of the settlement and certify the proposed class. *Swinton v. SquareTrade, Inc.*, 2019 WL 617791, at *5 (S.D. Iowa Feb. 14, 2019) (citing Fed. R. Civ. P. 23(e)(1)). At this stage, the Court must direct notice of the Settlement "if giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B).

Rule 23(e)(2), in turn, provides that a court may approve a proposed class settlement "only on finding that it is fair, reasonable, and adequate after considering" four factors. These factors,

9

discussed below, do not "displace the various factors that courts have developed in assessing the fairness of a settlement." *Swinton*, 2019 WL 617791, at *5. Instead, they "focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *Id.* (quoting Rule 23(e)(2), 2018 Advisory Note). A proposed class action settlement should therefore be preliminarily approved where it "[has] no obvious defects and was within the range of possible settlement approval." *Meller v. Bank of the W.*, 2018 WL 5305562, at *3 (S.D. Iowa Sept. 10, 2018); *In re Pork Antitrust Litig.*, 2022 WL 22861435, at *1 (D. Minn. Nov. 9, 2022) (preliminarily approving a class settlement because it was "within the range of possible approval"). Here, the proposed Settlement satisfies Rule 23(e).

### 2. The Settlement Is Procedurally Fair

The Court must first consider whether "the class representatives and class counsel have adequately represented the class" and whether "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(A)–(B). Adequacy involves two questions: "(1) whether it shares common interests with the other class members; and (2) whether it vigorously pursued the interests of the class through qualified counsel." *PHT Holding II LLC v. N. Am. Co. for Life & Health Ins.*, 2023 WL 8522980, at *3 (S.D. Iowa Nov. 30, 2023) ("*North American COI*") (citing *Kelly*, 277 F.R.D. at 569). Where, as here, a settlement is "obtained through arm's-length negotiations," there is "[an] assumption of fairness and reasonableness." *North American COI*, 2023 WL 8522980, at *3.

Here, Plaintiffs' interests are aligned with the Settlement Class: each suffered the same alleged injury (improper COI overcharges) and have the same interest in maximizing recovery from Transamerica. *See North American COI*, 2023 WL 8522980, at *3 (finding the class representative "adequately represented the class" because "it suffered the same improper COI overcharges, giving it the same interest in maximizing its recovery…for that injury."); *Grove v. Principal Mutual Life Ins. Co.*, 200 F.R.D. 434, 440 (S.D. Iowa 2001) (finding that plaintiffs'

interests aligned with the class when they suffered the same injury and did not have interests antagonistic to the class). The proposed Plan of Allocation relies on an objective formula tied to the overcharges on each Settlement Class Policy, subject to a minimum payment, and it does not discriminate against any Settlement Class Member or group of Members. Ex. 2, Ex. C.

The Court appointed Susman Godfrey as Class Counsel, finding that Susman Godfrey had "adequately represented plaintiffs." Dkt. 166 at 17. Susman Godfrey has continued to litigate the claims against Transamerica diligently, including through the multi-year discovery period. Susman Godfrey is highly experienced in contract and insurance litigation and views the Settlement as an excellent result. Sklaver Decl. ¶¶ 3–4 & Ex. 1. Class Counsel's view of the Settlement is well informed: this case has been pending for almost four years, fact and expert discovery is closed, the parties produced nearly 32,202 documents, and Plaintiffs defeated Transamerica's motion for summary judgment. All that is left is trial and appeal. And as discussed below, the result here—as a percent of alleged damages—exceeds the results obtained in similar COI cases, far exceeds the typical settlement in other types of class actions, and is exceptional given the factual disputes at issue, such as the correct way to prove damages.

The Settlement was also reached at arm's length. The Settlement is the culmination of vigorous negotiation and mediation efforts over several months, including a mediation session with a highly experienced, respected, and neutral mediator. *See* Sklaver Decl. ¶¶ 5–9; Green Decl. ¶¶ 6–11. The mediator agrees that the Settlement "is an excellent result for the putative class that reflects the strenuous negotiations between highly professional counsel." Green Decl. ¶ 11.

### 3. The Settlement Is Substantively Fair

Next, the Court must assess substantive fairness. Rule 23(e)(2)(C) lists four factors to consider: (i) "the costs, risks, and delay of trial and appeal," (ii) "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member

claims," (iii) "the terms of any proposed award of attorney's fees, including timing of payment," and (iv) "any agreement required to be identified under Rule 23(e)(3)." To assess the adequacy of relief, "courts may need to forecast the likely range of possible classwide recoveries and the likelihood of success in obtaining such results." Fed. R. Civ. P. 23(e)(2), 2018 Advisory Note.

Courts in this Circuit consider these factors "along with" those commonly known as the "*Van Horn* factors" from the Eighth Circuit opinion, *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988). *See Swinton v. SquareTrade, Inc.*, 454 F. Supp. 3d 848, 861 (S.D. Iowa 2020); Fed. R. Civ. P. 23(e)(2), 2018 Advisory Note (Rule 23(e)(2) factors do not "displace" circuit case-law factors). The four *Van Horn* factors are: (1) the merits of the plaintiff's case weighed against the terms of the settlement; (2) the defendants' financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement. 840 F.2d at 607. No one factor is determinative, but "[t]he single most important factor in determining whether a settlement is fair, reasonable, and adequate is a balancing of the strength of the plaintiff's case against the terms of the settlement." *Marshall v. Nat'l Football League*, 787 F.3d 502, 508 (8th Cir. 2015) (quoting *Van Horn*, 840 F.2d at 607).

a. **Costs, Risks, and Delay of Trial and Appeal**: Rule 23(e)(2)(C)(i) requires courts to consider "the costs, risks, and delay of trial and appeal." This inquiry overlaps with *Van Horn* factors one ("the merits of the plaintiffs' case weighed against the terms of the settlement") and three ("the complexity and expense of further litigation."). 840 F.2d at 607.

In general, class actions "place an enormous burden of costs and expense upon [] parties." *Marshall*, 787 F.3d at 512. And this case is more complex than most. Plaintiffs alleged breaches of insurance contracts, and establishing those breaches required interpreting "technical actuarial terms and concepts" and applying them using complicated actuarial modeling software. *See North*

12

*American COI*, 2023 WL 8522980, at *4. Resolving those claims would require the jury to weigh, among other things, conflicting expert testimony as to actuarial standards and practices, the application of those standards and practices, the proper pricing assumptions, the correct factors for an MDR increase, and the proper methodology for determining MDRs—essentially reducing this dispute to an "unclear" battle of the experts. *Fleischer v. Phoenix Life Ins. Co.*, 2015 WL 10847814, at *9 (S.D.N.Y. Sept. 9, 2015) ("*Phoenix COI*").

Substantial risks existed as to both liability and damages. Transamerica, represented by experienced counsel, challenged virtually every aspect of Plaintiffs' claim. *See, e.g.*, *Kelly*, 277 F.R.D. at 570 (defendant's "capable counsel" who challenged "nearly every aspect of Settlement Class Members' case" was a factor that supported approving the settlement). Transamerica argued that certain contract provisions at issue had nothing to do with changing MDRs and therefore did not prohibit Transamerica's 2022/23 MDR Increases at all. Dkt. 143-1 at § II. Transamerica also argued that the 2022/23 MDR Increases were purely prospective and therefore permitted for all LA UL policies. *Id.* § III.A. And for CR UL policies with a uniformity provision, Transamerica argued that the term "premium class" did not apply across products. *Id.* § IV.B. These arguments, if accepted, would have entirely wiped out Plaintiffs' claims.

The Court denied Transamerica's request for summary judgment to interpret Plaintiffs' contract provisions at issue, unambiguously, in favor of Transamerica as a matter of law. Dkt. 162 at 15, 21, 25. The Court, however, left numerous risky questions critical to proving breach to the jury. *Id.* at 17–26. Even if Plaintiffs prevailed on all contract interpretation issues, there would have been no guarantee of any meaningful recovery at trial. For example, even if the jury agreed with Plaintiffs' interpretation of the policy language, and found that Transamerica breached each relevant provision, it could have nonetheless concluded that a "corrected" MDR increase would

13

have resulted in minimal damages.[3] *See* Dkt. 166 at 19–20. And even if Plaintiffs prevailed on liability and damages at trial, Transamerica would inevitably appeal the class certification order, summary judgment order, and jury's verdict, which would delay any distributions to Settlement Class Members "for years." *Phoenix COI*, 2015 WL 10847814, at *6.

Given these risks, the recovery here is an exceptional result. The Settlement Fund exceeds Plaintiffs' damages model for all Settlement Class Policies through January 2026, compared to the $0 in damages proposed by Transamerica's experts. Sklaver Decl. ¶ 21. Even under the more stringent final approval standard, courts routinely approve settlements with substantially lower-percentage awards, including in other COI cases. *See, e.g.*, *Beaver Cty.*, 2017 WL 2574005, at *2 (holding that a "recovery of approximately 6.8% to 9.5%...of the Class' [estimated] maximum provable damages…exceeds the median recovery of estimated damages in similar securities class actions settled in 2016, as well as the median settlement as a percentage of estimated damages in the Eighth Circuit"); *Hancock COI*, No. 15-CV-09924 (S.D.N.Y. Mar. 18, 2019), Dkt. 164 at 20:10 (cash fund equal to 42% of COI overcharges was "quite extraordinary"); *North American COI*, 2023 WL 8522980, at *5 (preliminarily approving a settlement worth "36.2% of the COI overcharges"); *see also Keil v. Lopez*, 862 F.3d 685, 698 (8th Cir. 2017) ("the fact that a settlement provides only a portion of the potential recovery does not make such settlement unfair, unreasonable or inadequate."). The Settlement exceeds the 68.5% of COI overcharges recovered in another case, which the court called "one of the most remunerative settlements this court has ever been asked to approve." *Phoenix COI*, 2015 WL 10847814, at *11. And the money will come to Settlement Class Members much quicker under this Settlement, if approved, than through

---

[3] This risk of a lower-than-expected recovery is real. In a recent COI class trial in *Meek v. Kansas City Life Insurance Co.*, Case No. 19-CV-472 (W.D. Mo. 2019), the class sought $18 million in damages but recovered less than $1 million. *See* Sklaver Decl., Ex. 3 (*Meek* Tr.) at 69:9–16; *id.* Ex. 4 (*Meek* verdict form); *id*. Ex. 5 (*Meek* Decertification Order).

continued litigation. *See Kelly*, 277 F.R.D. at 570 (noting that "costly and lengthy appeals" could delay "the receipt of benefits").

The Settlement is even more exceptional given the nonmonetary benefits. The non-contestability guarantee ensures that Settlement Class Members will receive their policy benefits at maturity (assuming premiums are paid and benefit submissions made), and it prevents Transamerica from contesting Settlement Class Policies based on a lack of insurable interest. This concern is real given Transamerica's "Illegality" affirmative defense, which sought to bar all relief for policies "that are void or voidable under applicable public policy or state law." Dkt. 107 (Answer: Fifth Defense). On final approval in *Phoenix COI*, the court adopted an expert valuation of $33.3 million for a similar policy validity guarantee. 2015 WL 10847814, at *11. Plaintiffs here will submit expert valuation of this term, in connection with its request for final approval.

In sum, the Settlement is an excellent result for the Settlement Class, particularly given the myriad risks that Plaintiffs would face at trial and appeal. Class Counsel is intimately familiar with the facts and legal issues of this case and attests to its reasonableness and fairness. Sklaver Decl. ¶¶ 9, 30; *see also DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1178 (8th Cir. 1995) (stating class counsel's "experience in this type of litigation" supports providing deference to their views). This factor weighs in favor of preliminary approval. *See, e.g.*, *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 933 (8th Cir. 2005) ("the district court acted within its discretion when considering the strength of the claims and the amount of the settlement.").

**b. <u>Effectiveness of Any Proposed Method of Distributing Relief</u>**: Rule 23(e)(2)(C)(ii) requires that the "proposed method of distributing relief" be "effective." A proposed settlement satisfies this subfactor where it includes "detailed procedures for processing Settlement Class Members' claims and distributing the proceeds of the Settlement to eligible claims." *North*

*American COI* , 2023 WL 8522980, at *6 (quoting *In re Resideo Techs., Inc., Secs. Litig.*, 2022 WL 872909, at *3 (D. Minn. Mar. 24, 2022)). Plaintiffs' proposed plan requires nothing of Settlement Class Members, automatically distributing payments to them. *See* Sklaver Decl. ¶ 28; Ex. 2 ¶ 79; Ex. 2, Ex. C.

c. **The Terms of Any Proposed Award of Attorney's Fees**: The Court also considers "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). Class Counsel will apply for an award of attorneys' fees not to exceed one-third of the value of the Settlement. Sklaver Decl. ¶ 26; Ex. 2 ¶ 120. Class Counsel will not receive any funds until the Court has approved its fee request. Ex. 2 ¶¶ 120–21. The Settlement is not conditioned on the Court's approval of Class Counsel's Fee and Expense Application. *Id.* ¶ 123.

Awards of this amount have been deemed reasonable and typical in comparable class actions, and the requested amount is consistent with fee awards approved by this Court and the Eighth Circuit. *See, e.g.*, *Huyer v. Buckley*, 849 F.3d 395, 399 (8th Cir. 2017) ("courts have frequently awarded attorneys' fees ranging up to 36% in class actions."); *Huyer v. Wells Fargo & Co.*, 314 F.R.D. 621, 629 (S.D. Iowa 2016) (awarding $8.58 million, 1/3 of the total settlement fund, as "in line with other awards in the Eighth Circuit"); *Vogt v. State Farm Life Ins. Co.*, 2021 WL 247958, at *3 (W.D. Mo. Jan. 25, 2021), *aff'd*, 19 F.4th 1071 (8th Cir. 2021) (awarding one-third of roughly $40 million common fund in a COI case). Class Counsel's fee request will be briefed in full before the Fairness Hearing.

d. **Any Agreement Required to Be Identified Under Rule 23(e)(3)**: Rules 23(e)(2)(C)(iv) and 23(e)(3) require that any agreement "made in connection with the proposal" be identified. There are no agreements beyond the Settlement Agreement. The Settlement Agreement references a Confidential Termination Agreement, ¶¶ 132–33, which can be provided to the Court upon

request, that allows the parties, in their discretion, to terminate the Settlement if a certain proportionate reduction in the Settlement Fund is triggered by any opt-outs.

**e. The Plan of Allocation Treats Class Members Equitably**: The final Rule 23(e)(2)(D) factor focuses on equitable treatment of Settlement Class Members, which is easily satisfied because the proposed Plan of Allocation distributes the Settlement Fund on a *pro rata* basis using each Settlement Class Member's Proportionate MDs. Sklaver Decl. ¶ 28; Ex. 2, Ex. C ¶¶ 1–2. Courts have "frequently" approved of *pro rata* allocation plans. *Phoenix COI*, 2015 WL 10847814, at *12; *see also Carroll v. Flexsteel Indus., Inc.*, 2022 WL 4002313, at *3 (N.D. Iowa Sept. 1, 2022) (finding a *pro rata* "distribution formula" to be "equitable").

**f. The Proposed Settlement Satisfies Other *Van Horn* Factors**: The remaining *Van Horn* factors—the defendant's financial condition and the amount of opposition to the settlement—are neutral. Even assuming Transamerica is "in good financial standing," this factor does not weigh against the Settlement. *Marshall*, 787 F.3d at 512; *Swinton*, 454 F. Supp. 3d at 878–79. And the Settlement Class has not yet had the opportunity to object to the proposed Settlement; any Statements of Objection will be provided to the Court and addressed before the Fairness Hearing.

## B. The Settlement Class Should Be Certified

The Settlement Class should be certified for the same reasons set forth in this Court's class certification order. Dkt. 166. The Settlement Class includes all members of the certified litigation class, as well as additional LA UL and CR UL products that are in the same blocks of business as Plaintiffs' products and were subject to the 2022/23 MDR Increases. *See* Fed. R. Civ. P. 23(e)(1), 2018 Advisory Note ("If the court has already certified a class, the only information ordinarily necessary is whether the proposed settlement calls for any change in the class certified, or of the claims, defenses, or issues regarding which certification was granted."). Courts regularly certify settlement classes that expand a previously certified class when, as here, the expansion does not

17

Case 1:23-cv-00032-CJW-MAR    Document 185-1    Filed 03/17/26    Page 22 of 27

disturb the analytical foundation of the original certification order. *See Youth Just. Coalitions v. City of Los Angeles*, 2020 WL 9312377, at *2 (C.D. Cal. Nov. 17, 2020); *Allen v. Similasan Corp.*, 2017 WL 1346404, at *3 (S.D. Cal. Apr. 12, 2017) (same); *Cook v. Gov't Emps. Ins. Co.*, 2020 WL 14087606, at *3 (M.D. Fla. June 22, 2020) (same).

Here, certification of the Settlement Class does not undermine nor "alter the reasoning" in the Court's certification order. *See Youth Just. Coalitions*, 2020 WL 9312377, at *2. For example, one product within the Settlement Class that was not in the litigation class is known as ISWL08 (or ISWL08R), which has the same Past Losses Provision as the LA UL policies within the previously certified Past Losses Class and was subjected to the same 2022/23 MDR Increases. For the CR UL policies, the primary difference is that for some of the added products, the contracts use the term "risk rate" rather than "cost of insurance rate," but Transamerica has admitted that those terms are "interchangeable." Sklaver Decl. ¶ 25, Ex. 6 (M. Keppler Depo.). Numerosity remains satisfied. *Id.* ¶ 25. Commonality and predominance remain satisfied because the products within the Settlement Class are on common "form contracts" that are similar to those in the previously certified classes. Dkt. 166 at 11, 18; Sklaver Decl. ¶ 25. On predominance, every policy experienced an MDR increase and was subject to the same uniform analysis Milliman created to justify Transamerica's 2022/23 MDR Increases. Dkt. 166 at 5; Sklaver Decl. ¶ 25. The same damages methodology from Plaintiffs' expert can determine the total Additional MDs and depleted account values for the added policies. Dkt. 166 at 19; Sklaver Decl. ¶ 25.

Plaintiffs' claims remain typical of the Settlement Class's claims: each Settlement Class Member's claim arises from the "same rate increases," involves similar "form insurance policies," and seeks "damages for the lost value to its account caused by the allegedly unlawful raises." Dkt. 166 at 12, 15. Superiority is satisfied as well because Policyowners still do not have a "significant

18

interest in litigating their claims," it is more "efficient" and "just" to decide their claims together, and every Settlement Class Member will benefit from the Settlement.[4] *Id.* at 26–27.

### C. The Proposed Form and Manner of Notice Is Appropriate

Rule 23(e)(1)(B) requires that notice be directed "in a reasonable manner to all class members who would be bound by the proposal." That Rule and due process require that notice be the "best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Amchem*, 521 U.S. at 617; *Grunin*, 513 F.2d at 121 ("notice need only satisfy the broad reasonableness standards imposed by due process").

Plaintiffs' proposed notice plan is substantially the same as the one the Court previously approved and should be approved for the same reasons. *See* Dkt. 172; Sklaver Decl. ¶ 19; Kamenir Decl. ¶¶ 13–19. Notice delivery by first-class mail is authorized by Rule 23(c)(2)(B) and was approved by the Court. *See* Dkt. 172; Sklaver Decl. ¶ 19; Kamenir Decl. ¶¶ 15–17; *see also Edwards v. Orchestrate Hosp. Grp., L.L.C.*, 2017 WL 2423792, at *2 (S.D. Iowa Feb. 23, 2017). The Court previously approved Simpluris as the Notice Administrator. Dkt. 172. Simpluris adequately discharged its duties in that role. Sklaver Decl. ¶ 19. The notices will inform Settlement Class Members about the Settlement terms, the Plan of Allocation, attorneys' fees and expenses and service award applications, their right to opt out or object, and the Fairness Hearing. *See* Ex. 2, Exs. A, B.

Like the prior notice plan, the Settlement notice plan provides forty-five days for the opt-out period, and the same amount of time for objections. This period is reasonable. *See, e.g.*, *Carroll*, 2022 WL 4002313, at *3 (approving 30-day opt-out period in ERISA class action).

---

[4] The Court need not analyze manageability issues because this is a settlement class and the Court will not be "managing a class action trial." *In re Uponor, Inc., F1807 Plumbing Fittings Prods. Liab. Litig.*, 2012 WL 2512750, at *5 (D. Minn. June 29, 2012) (citing *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)).

19

### D. Proposed Schedule

Plaintiffs propose the following schedule:

| EVENT | DAYS FROM PRELIMINARY APPROVAL |
|---|---|
| Deadline to send notice to Settlement Class Members | 21 days |
| Deadline to file motion for award of attorney's fees, expenses, and service awards | 52 days |
| Opt-Out and Objection Deadline | 66 days |
| Deadline to file final approval motion | 80 days |
| Deadline to file any reply brief in support of any motion | 101 days |
| Final Approval Hearing | 108 days |

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs request that the Court (i) preliminarily approve the proposed Settlement and Plan of Allocation; (ii) preliminarily certify the Settlement Class and appoint Plaintiffs as Class Representatives and Susman Godfrey as Class Counsel; (iii) approve the proposed form and manner of notice to the Settlement Class; and (iv) schedule a date and time for a hearing to consider final approval of the Settlement and related matters.

Dated: March 17, 2026          By: /s/ *Steven G. Sklaver*
**SUSMAN GODFREY LLP**

Steven Sklaver (*pro hac vice*)
ssklaver@susmangodfrey.com
Michael Gervais (*pro hac vice*)
mgervais@susmangodfrey.com
Glenn Bridgman (*pro hac vice*)
gbridgman@susmangodfrey.com
Rohit Nath (*pro hac vice*)
rnath@susmangodfrey.com
Jordan Rux (*pro hac vice*)
jrux@susmangodfrey.com
Kimberly Page (*pro hac vice*)
kpage@susmangodfrey.com

1900 Avenue of the Stars, 14th Floor
Los Angeles, CA 90067
Telephone: (310) 789-3100
Fax: (310) 789-3150

Seth Ard (*pro hac vice*)
sard@susmangodfrey.com
Ryan C. Kirkpatrick (*pro hac vice*)
rkirkpatrick@susmangodfrey.com

One Manhattan West
New York, NY 10001
Telephone: (212) 336-8330
Fax: (212) 336-8340

**TAFT STETTINIUS & HOLLISTER LLP**
Peter Eugene Deegan, Jr.
pdeegan@taftlaw.com
111 East Wacker Drive, Suite 2600
Chicago, IL 60601-3713
Telephone: (312) 836-4052

**ATTORNEYS FOR PLAINTIFFS**

21

## CERTIFICATE OF SERVICE

I hereby certify this 17th day of March, 2026, that I caused a true and correct copy of the foregoing to be electronically filed with the Clerk of the court using the CM/ECF system which will send notification to attorneys of record.

/s/ *Steven G. Sklaver*
Steven G. Sklaver

22