**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF IOWA CEDAR RAPIDS DIVISION**

ESTATE OF LAWRENCE HANDORF, BY AND THROUGH ITS ADMINISTRATOR MELISSA BARGER, BLACKOAK LIFE LIMITED AS GP FOR BLACKOAK INVESTORS GP, and PHT HOLDING II LP, on behalf of themselves and all others similarly situated,

Plaintiffs,

vs.

TRANSAMERICA LIFE INSURANCE COMPANY,

Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.: 1:23-cv-00032-CJW-MAR

**DECLARATION OF STEVEN G. SKLAVER IN SUPPORT OF PLAINTIFFS' UNRESISTED MOTION FOR PRELIMINARY APPROVAL AND CLASS CERTIFICATION**

I, Steven G. Sklaver, declare as follows:

1. I submit this declaration in support of Plaintiffs' motion for preliminary class certification and preliminary approval of the proposed class action settlement ("Settlement") between Plaintiffs Estate of Lawrence Handorf, by and through its Administrator Melissa Barger ("Handorf"), Blackoak Life Limited as GP for Blackoak Investors GP ("Blackoak"), and PHT Holding II LP ("PHT") (collectively "Plaintiffs"), on behalf of themselves and the Settlement Class, and Defendant Transamerica Life Insurance Company ("Defendant" or "Transamerica").

2. I am a partner in the law firm of Susman Godfrey L.L.P., which is counsel for Plaintiff and the Court-appointed Class Counsel (referred to herein as "Class Counsel") in the above-captioned matter. I have personal, first-hand knowledge of the matters set forth herein and, if called to testify, as a witness, could and would testify competently thereto.

3. Susman Godfrey has significant experience with insurance litigation and class actions, including cost of insurance ("COI") class actions and settlements thereof.[1] Susman Godfrey has been appointed sole Class Counsel in numerous cases seeking recovery of COI overcharges against insurers, including cases involving Phoenix Life Insurance Company, Security Life of Denver Insurance Company, Genworth Life Insurance & Annuity Company, Voya Retirement Insurance and Annuity Company, Lincoln Life & Annuity Company of New York, AXA Equitable Life Insurance Company, ReliaStar Life Insurance Company, John Hancock Life Insurance Company (U.S.A.), North American Life and Health Company, and PHL Variable Insurance Company.[2] A copy of the firm's profile in such cases, and the profiles of myself and my fellow Class Counsel, are attached hereto as **Exhibit 1**.

4. My firm's results in such cases have been lauded by federal judges as "superb," *Fleisher v. Phoenix Life Ins. Co.*, No. 11-CV-8405 (S.D.N.Y. Sep. 24, 2015), Dkt. 319 at 3:9–11, "the best settlement pound for pound for the class I've ever seen," *id.*, and "quite extraordinary," *37 Besen Parkway, LLC v. John Hancock Life Insurance Co.*, 15-CV-9924 (PGG), Dkt. 164 at 20:9–10 (S.D.N.Y. Mar. 18, 2019) ("*Hancock COI*"). I also closely follow other class actions involving life insurance, particularly COI class actions. I am thus intimately familiar with the terms

---

[1] The terms "monthly deduction rate" and "cost of insurance rate" are functionally synonymous, with some Settlement Class Policies using the former term and others using the latter. This Declaration uses these terms interchangeably.

[2] The following is a non-exhaustive list of COI cases in which Susman Godfrey has been found to be "adequate" class counsel: *Advance Tr. & Life Escrow Servs., LTA v. N. Am. Co. for Life & Health Ins.,* 592 F. Supp. 3d 790, 810 (S.D. Iowa 2022); *Hanks v. Lincoln Life & Annuity Co. of N.Y.*, 330 F.R.D. 374, 387 (S.D.N.Y. 2019); *Vida Longevity Fund, LP v. Lincoln Life & Annuity Co. of N.Y.*, 2022 WL 986071, at *5 (S.D.N.Y. Mar. 31, 2022); *Advance Tr. & Life Escrow Servs., LTA v. ReliaStar Life Ins. Co.*, 2022 WL 911739, at *11 (D. Minn. Mar. 29, 2022); *Advance Tr. & Life Escrow Servs., LTA v. Sec. Life of Denver Ins. Co.*, 2021 WL 62339, at *9 (D. Colo. Jan. 6, 2021); *In re AXA Equitable Life Ins. Co. COI Litig.*, 2020 WL 4694172, at *16 (S.D.N.Y. Aug. 13, 2020); *Fleisher v. Phoenix Life Ins. Co.*, 2013 WL 12224042, at *12 (S.D.N.Y. July 12, 2013); and *37 Besen Parkway, LLC v. John Hancock Life Ins. Co.*, 15-CV-9924 (S.D.N.Y. Nov. 1, 2018), Dkt. 139 ¶¶ 7–8.

2

of settlement in these types of cases, how to evaluate the relative strengths and weaknesses in such cases, and what a successful result looks like.

5. I was the principal negotiator of the proposed class action Settlement with Transamerica. Following extensive negotiations, the parties reached a tentative agreement to potentially resolve the litigation on August 29, 2025, and following additional negotiations and completion of internal corporate approval requirements, the long-form settlement agreement was fully executed on March 17, 2026. I attach a true and correct copy of the fully executed Settlement Agreement as **Exhibit 2**.[3] It is the opinion of Class Counsel that this Settlement with Transamerica is fair, adequate, and reasonable. The named Plaintiffs similarly support this Settlement and believe it to be fair, adequate, and reasonable.

6. The Settlement Agreement is the result of extended settlement discussions and negotiations, including an in-person, all-day mediation session and numerous telephone and email exchanges. The parties initiated the settlement discussions on July 29, 2025, with an all-day mediation led by mediator Professor Eric D. Green with Resolutions LLC. Before the mediation, the parties submitted lengthy mediation statements, and Plaintiffs also provided an updated damages estimate. Although no agreement was reached during the initial session, over the following month, the parties continued to negotiate with the assistance of the mediator. On August 29, 2025, the parties reached a tentative agreement as to the potential terms of a settlement and informed the Court of the development during a conference call on September 4, 2025.

7. As part of the mediation process, the parties exchanged lengthy mediation statements, several settlement offers and counteroffers as well as the class certification and

---

[3] The capitalized terms used herein shall have the meanings set forth in the Settlement Agreement.

summary judgment briefing filed with the Court and updated damages estimates. The parties had sharply different views about virtually all issues, including the merits and damages.

8. It would be an understatement to say that Class Counsel was well informed of all material facts. Discovery had been completed; the case had advanced past class certification and summary judgment; and full expert reports had been completed. Throughout this case, Class Counsel took steps to ensure that we had all the necessary information to advocate for a fair, adequate, and reasonable settlement that serves the best interests of the Settlement Class.

9. The settlement negotiations were hard fought, arms-length, and non-collusive. It is my unequivocal opinion that the Settlement is fair, adequate, and reasonable, and reflects an excellent result for the Class, particularly given the risks faced at trial and on appeal.

10. This risk of a lower-than-expected recovery is aptly illustrated in a recent COI class action trial in *Meek v. Kansas City Life Insurance Co.*, No. 19-CV-472 (W.D. Mo. 2019), where the class sought $18 million in damages. Despite prevailing on liability, that class ultimately recovered less than six percent of the alleged overcharges after the jury only awarded $5 million, which was further reduced to just $900,000, after the court granted partial decertification post-trial. *See Meek*, 4/28/2023 Tr. at 69:9–16 (a true and correct copy attached as **Exhibit 3**); *Meek*, Dkt. 311 (verdict form) (a true and correct copy attached as **Exhibit 4**); *Meek*, Dkt. 329 (Order (1) Granting Defendant's Motion to Partially Decertify Class, (2) Dismissing Count V Without Prejudice, and (3) Directing that Judgment be Entered) (a true and correct copy attached as **Exhibit 5**).

4

11.     This case was originally filed by BOAGF Holdco LP[4] almost four years ago on October 27, 2022, in the Central District of California, challenging Transamerica's 2022/23 MDR Increases. ECF No. 1. The case was subsequently transferred to the Northern District of Iowa. ECF No. 60. On December 1, 2023, Plaintiffs amended their complaint to add Lawrence Handorf and PHT as named plaintiffs in this action. ECF No. 102. After the death of Plaintiff Handorf, the Court granted Plaintiffs' Motion to Substitute the Estate of Lawrence Handorf, by and through its Administrator Melissa Barger, as Plaintiff and Class Representative of the Uniformity Class. ECF Nos. 177, 178.

12.     The parties engaged in extensive discovery beginning on January 3, 2023. Fact discovery lasted until May 19, 2025, with supplemental discovery obligations under Federal Rule of Civil Procedure 26(e) continuing thereafter. The parties produced over 28,000 documents totaling over 160,000 pages. Plaintiffs and their experts analyzed more than 20,000 documents totaling over 139,000 pages, which included complex and extensive actuarial tables, policy-level data reflecting the historical credits and deductions to the account value of all Settlement Class Members' policies, and thousands of spreadsheets. In total, Plaintiffs issued 112 requests for production, 17 interrogatories, and 176 requests for admission, and Defendant issued 148 requests for production and 35 interrogatories. Plaintiff engaged in numerous rounds of meet and confers with respect to these discovery requests, including extended negotiations over search terms, custodians, supplementation of interrogatory responses, and other issues.

---

[4] On July 24, 2024, BOAGF Holdco LP, assigned its ownership interest in its TransUltra 115 policy at issue to Blackoak, who became the legal and beneficial owner of the policy. ECF No. 137. On November 2024, the Court granted the Parties' agreed motion to substitute Blackoak as Plaintiff for BOAGF Holdco LP. ECF No. 138.

13.     Plaintiff also issued nine subpoenas to third parties, including Milliman, Inc. ("Milliman"), the third-party consultant who performed the actuarial modeling and calculations underlying the 2022/23 MDR Increases, Transamerica Corporation and Commonwealth General Corporation, PwC, Boston Consulting Group, and various reinsurers.  Plaintiff also filed Letters Rogatory to The Hague requesting service of a subpoena requesting documents from Aegon Ltd., Transamerica's ultimate parent who was based in the Netherlands at the time. As a result of the subpoenas served by Plaintiffs, the third parties produced nearly 12,000 documents totaling over 232,000 pages. The bulk of the documents produced by third parties were produced by Milliman and consisted of its nearly 3,500 modeling files, thousands of spreadsheets, other work papers, and email communications.  Plaintiffs also secured access to Milliman's MG-ALFA actuarial software, which was used to model the 2022/23 MDR Increases.

14.     Milliman initially refused to produce its internal communications regarding its work on the 2022/23 MDR Increases. Plaintiffs filed a motion to compel Milliman to produce these internal communications.[5] Following briefing by the Plaintiffs and Milliman, the Court granted Plaintiffs' motion holding that: (1) "[t]he discussion among the people who performed the analysis about that analysis is sufficiently relevant to their recommendation regarding the [2022/23 MDR Increases] to permit the requested discovery," (MISC ECF No. 39 at 7–8); (2) Milliman was not unduly burdened by the requested discovery because, among other things, it is "intimately involved in the dispute" and Transamerica paid Milliman for its time in responding to the subpoena, (*id*. at 8–11); (3) "the information sought is within the scope of 26(b)(1)" and Milliman

---

[5] This motion was initially filed in the Southern District of New York, but was subsequently transferred to the Northern District of Iowa. (MISC ECF No. 14).

Case 1:23-cv-00032-CJW-MAR     Document 185-2     Filed 03/17/26     Page 6 of 14

was the only source for the requested information, (*id*. at 12); and (4) Milliman failed to establish any privilege that "would prevent the production of the requested records," (*id*. at 15).

15.     Plaintiff took 15 highly technical fact depositions, primarily of licensed actuaries, and two expert depositions. Through these depositions, which included testimony from individuals designated to testify on behalf of Transamerica and Milliman under Rule 30(b)(6), Plaintiffs obtained key admissions that they deployed to support class certification and overcome summary judgment. Plaintiffs also defended two depositions of corporate representatives, one individual deposition, and two depositions of their experts.

16.     This action involved significant expert analyses and reporting. Plaintiffs ultimately disclosed class certification and merits expert reports from the following experts: actuarial expert Howard Zail and damages expert Robert Mills.[6] Plaintiffs produced opening expert reports from Zail and Mills on March 4, 2025. In response, Transamerica designated actuarial expert Timothy Pfeifer and financial expert Craig Merrill. Transamerica produced reports from its experts on March 31, 2025.[7] On April 28, 2025, Plaintiffs produced rebuttal reports from Zail and Mills. Transamerica then served sur-rebuttal reports from Pfeifer and Merrill on August 25, 2025. All four experts were deposed. Plaintiffs also produced expert reports from Zail and Mills in connection with their motion for class certification and opposition to Transamerica's motion for partial summary judgment, and Transamerica submitted expert reports from Pfeifer and Mills in opposition to class certification. Collectively, the parties produced fifteen expert reports that totaled more than 900 pages, with thousands of pages of exhibits and appendices. Class Counsel

---

[6] Plaintiffs submitted initial and reply expert reports from Howard Zail and Robert Mills and Howard Zail submitted a report in opposition to Defendant's Motion for Partial Summary Judgment (Dkts. 141-1, 141-5-12, 151-5, 158-2, 158-3), which were incorporated into their merits reports.
[7] Transamerica also filed an expert declaration from Timothy Pfeifer in opposition to Plaintiffs' Motion for Class Certification. (Dkt. 152-2).

also retained a consulting expert, who provided valuable assistance to Plaintiffs and the Settlement Class. Plaintiffs' experts engaged in extensive analyses of Transamerica's models, data and documents produced, including reviewing documentation and assumptions relating to over 70 products. Plaintiffs' experts spent hundreds of hours conducting their essential work in this case.

17.     Plaintiffs engaged in extensive motion practice in this action. On June 3, 2025, after nearly 90 pages of briefing (and over 39,000 pages of exhibits),[8] the Court certified the following classes and subclasses:

| i. | **Uniformity Class**: All owners of universal life policies issued or insured by Transamerica Life Insurance Company, or its predecessors out of Cedar Rapids, Iowa, and subjected to the monthly deduction rate and COI rate increases first announced in or after 2021, excluding owners of Bond Continuation, ISL Security Plus, Life Security, Premier Life, Security Plus II, Security Plus ISWL, Triple Protector, Ultima Simplified Protector, and Youth Protector. |
|---|---|
| ii. | **Mortality Factor Subclass**: All members of the Uniformity Class that own Agri-VIP, Bankers Universal Life, Horizon 2, HUB, HUB PA, Pacific Fidelity UL, Preferred Gold II, Preferred UL, Summit UL, Uni-VIP HUB, and Single Premium (plan codes UL1020, UL1021, UL1022, UL1A28, UL1036, and UL1037). |
| iii. | **Past Losses Class:** All owners of TransAdvantage, TransSavers, TransUltra 2K, TransUltra 1997, TransUltra LP, TransUltra LP 2005, TransValue, and TransValue 2002 issued or insured by Transamerica Life Insurance Company, or its predecessors, subjected to the monthly deduction rate and COI rate increases first announced in or after 2021. |
| iv. | **Conversion Subclass:** All members of the Past Losses Class, excluding owners of TransValue, TransUltra LP, and TransUltra LP 2005. |

ECF No. 166 at 27–28. As part of their motion for class certification, Plaintiffs provided nearly 50 pages of comprehensive surveys, marshaling the law for nearly every state on state rules of contract interpretation and synthesizing that law into a manageable approach for trial. ECF No. 142-23–25.

---

[8] *See* Dkts. 142, 141, 152, 158.

The Court rejected Transamerica's assertion that predominance was defeated based on the need to apply different state laws. Instead, the Court found that Plaintiffs provided state law surveys "accurately" summarizing the relevant state breach of contract and contract interpretation law and grouping the states "based on similarities of the laws" and provided "a detailed plan using different stages to interpret form contracts when multiple states' laws are at issue." ECF No. 166 at 25. In appointing Susman Godfrey as Class Counsel, the Court noted that Susman Godfrey "has handled several similar cases and has so far adequately represented Plaintiffs here. The Court is confident it will continue to do so." *Id*. at 17.

18. On June 17, 2025, Transamerica filed a Petition for Permission to Appeal Order Granting Class Certification Pursuant to Rule 23(f) ("Petition") with the United States Court of Appeals for the Eighth Circuit. ECF No. 167. On July 3, 2025, Plaintiffs filed their Answer to the Petition of Transamerica Life Insurance Company for Permission to Appeal Pursuant to Rule 23(f). Transamerica filed a Reply in Support of Petition for Permission to Appeal Order Granting Class Certification Pursuant to Rule 23(f). On August 13, 2025, the Eighth Circuit denied Transamerica's Petition. ECF No. 171.

19. Following class certification, the Court approved Class Counsel's proposed notice plan and appointed Simpluris as the Notice Administrator. ECF No. 172 at 3. On August 29, 2025, members of the previously certified classes and subclasses were given notice by first-class mail and were given a 45-day window in which to opt out. ECF No. 170 at 6; ECF No. 175 at 2, 5. Simpluris also set up a website with information in a long-form notice, as well as a toll-free number that members of the classes and subclasses could call. ECF No. 175-1 ¶¶ 4–5. Of the 33,735 members of the previously certified classes and subclasses, Simpluris received just one (1) request

to opt out of the class during the opt-out period. It is my opinion that Simpluris adequately discharged its duties in its role as the Notice Administrator.

20. On December 18, 2025, Transamerica moved for partial summary judgment arguing, among other things, that Plaintiffs could not demonstrate that genuine issues of fact existed as to their breach of contract claims alleging that the 2022/23 MDR Increases (i) were not based on mortality factors enumerated in the contract; (ii) recouped past losses; and (iii) violated the policies' uniformity clause by imposing non-uniform increases for policyholders in the same premium class. ECF No. 143. On January 29, 2025, Plaintiffs filed their opposition to Transamerica's motion for partial summary judgment. ECF No. 151. Transamerica filed its reply on February 26, 2025. ECF No. 157. After full briefing by the parties, encompassing nearly 135 pages of briefing (and over 2200 pages of exhibits), the Court denied Transamerica's motion for partial summary judgment against the Plaintiffs. ECF No. 162. The Court found that the policy provisions at issue were ambiguous. *Id.* at 15, 21, 25-26.

21. Under Plaintiffs' damage model, Settlement Class Members paid, through January 2026, $47,299,546 more than they would have but for Transamerica's 2022/23 MDR Increases.

22. The specific terms and conditions of the Settlement are set forth in the Settlement Agreement, which is attached as **Exhibit 2**. The principal terms of the Settlement are as follows:

- **CASH PAYMENTS**: A $57 million settlement fund will be funded for the benefit of the Settlement Class. That amount will be proportionally reduced based on the Proportionate MDs through August 31, 2025 of each Policyowner who submits a Request for Exclusion, divided by the total Additional MDs through that same date for all Settlement Class Policies, resulting in the Final Settlement Fund. Ex. 2 § III.A, ¶¶ 77–78. None of the Final Settlement Fund will revert to Transamerica to keep for itself. *Id*. at § III.B, ¶ 82.

- **MDR INCREASE BAN**: Transamerica will not impose any additional COI schedule increases on any Settlement Class Policy for five years following the execution of the Settlement Agreement, unless ordered to do so by a regulatory body. *Id.* at ¶ 83.

- **POLICY VALIDITY GUARANTEE**: Transamerica will not void, rescind, cancel, or otherwise deny coverage on any Settlement Class Policy based on any alleged lack of insurable interest or misrepresentations made in connection with the original application process. *Id.* at ¶ 84.

23. The cash portion of the Settlement alone is, in Class Counsel's view, exceptional. The Settlement Fund equals approximately **120%** of the total alleged damages through January 2026 under Plaintiffs' damages model for all Settlement Class Policies. This represents an enormous increase over the $0 in alleged damages under the approach proposed by Transamerica's experts, under which COI rates are increased after correcting the errors identified by Plaintiffs.

24. The non-monetary benefits provide additional, real value to the Settlement Class. The Validity Guarantee prevents Transamerica from nullifying the benefits provided in the Settlement Agreement by challenging the validity of any Settlement Class Policy on lack of insurable interest grounds. In another case where I was Class Counsel, the court, on final approval, adopted an expert valuation of $33.3 million for a similar non-monetary policy validity guarantee. *Fleisher v. Phoenix Life Ins. Co.*, Nos. 11-CV-8405 (CM), 14-CV-8714 (CM) 2015 WL 10847814, *11 (S.D.N.Y. Sept. 9, 2015). Plaintiffs here will submit expert valuation of this term as well, in connection with their Class Fee and Expense Application.

25. The Settlement Class includes all policies subject to the 2022/23 MDR Increases. The Settlement Class includes 67 products, including ten products not included in the previously certified litigation classes. All of these policies fall into the LA UL and CR UL business blocks, which were both in the certified litigation classes, and are part of the following products:

| Product | LA UL or CR UL Business Block |
|---|---|
| ISWL08 & ISWL08R | LA UL |
| BOND CONTINUATION | CR UL |
| ISL SECURITY PLUS | CR UL |
| LIFE SECURITY | CR UL |
| PREMIER LIFE | CR UL |
| SECURITY PLUS II | CR UL |
| SECURITY PLUS ISWL | CR UL |
| TRIPLE PROTECTOR | CR UL |
| ULTIMA SIMPLIFIED PROTECTOR | CR UL |
| YOUTH PROTECTOR | CR UL |

All of these policies were issued using form contracts that are materially similar to the policies in the previously certified classes and subclasses. These policies were all subject to the 2022/23 MDR Increases and the same uniform analysis Milliman created to justify Transamerica's 2022/23 MDR Increases. For example, one product within the Settlement Class that was not in the litigation class is known as ISWL08 (or ISWL08R), which has the same Past Losses Provision as all of the LA UL policies within the previously certified Past Losses Class and were subjected to the 2022/23 MDR Increases as well. For the CR UL policies, the primary difference is that for some of the added products, the contracts use the term "risk rate" rather than "cost of insurance rate," but Transamerica has admitted that those terms are used interchangeably. Deposition of Matt Kepler at 116:5–9 ("Q: So is it fair to say that the risk rate used here is highly interchangeable with the terms we've discussed earlier, COI rate and monthly deduction rate? A. Broadly, yes."). (Excerpt attached as **Exhibit 6**). The same damages methodology from Plaintiffs' expert Robert Mills can determine the total COI overcharges for the added policies. An example of each policy is attached as **Exhibits 7–16**. Each policy in the Settlement Class suffered a depleted account value as a result of the 2022/23 MDR Increases.

26.	Class Counsel will file a motion seeking reimbursement of their costs, fees, and

Service Awards for the Class Representatives, which Plaintiffs propose to be heard at the same time as the final approval hearing. Class Counsel has committed to seeking fees not to exceed one-third of the gross benefits provided to the Settlement Class, and this is reflected in the proposed notices. Class Counsel will not receive any funds until the Court has granted their Class Fee and Expense Application.

27. In Class Counsel's experience, this is an outstanding recovery, particularly given the complexity of COI cases, the conflicting expert testimony on technical actuarial issues that a jury would be required to weigh, the unique disputes that existed as to how to interpret and apply the term "premium class" and determine whether past losses had been recovered, and the inherent uncertainties of litigation.

28. Class Counsel recommends the proposed Plan of Allocation attached to the Settlement Agreement. This plan was developed in conjunction with Plaintiffs' expert Robert Mills who has significant experience developing such plans for COI litigation. This Plan of Allocation treats all Settlement Class Members equitably because it distributes Settlement proceeds on a *pro rata* basis using each Settlement Class Member's Proportionate MDs. The Proportionate MDs are the proportion of each Policyowner's Additional MDs for their Settlement Class Policy (or Settlement Class Policies if more than one) as divided by the total Additional MDs for all Policies. The Additional MDs are the difference between: (a) the Monthly Deductions withdrawn from the accumulation value of a Settlement Class Policy as of August 31, 2025 under the Settlement Class Policy's MDR or COI rate schedules in effect after the 2022/23 MDR Increases; and (b) the Monthly Deductions that would have been withdrawn from the accumulation value of that same Settlement Class Policy as of August 31, 2025 under such Settlement Class Policy's MDR or COI rate schedules in effect immediately prior to each of the applicable 2022/23 MDR Increases.

Checks will be mailed directly to Settlement Class Members, using the addresses in Transamerica's files, and with no possibility of reversion to Transamerica to keep any funds for itself. The cash payments are automatic and do not require Settlement Class Members to submit a claim form. Each Settlement Class Member will receive a minimum payment of $200.00. The proposed Plan of Allocation also provides for a *pro rata* redistribution, within one year plus thirty days after the date the Settlement Administrator mails the first checks, of any funds remaining in the Net Settlement Fund to Settlement Class Members who previously cashed the checks they received, subject to the economic and administrative feasibility of making such a redistribution.

29. The Releases are also equitable, as they treat all Settlement Class Members equally and do not affect apportionment of damages.

30. In sum, it is my strong opinion that the proposal is fair, adequate, and reasonable, especially in light of Class Counsel's detailed assessments of the strengths and weaknesses of the claims asserted, the applicable damages, and the likelihood of recovery.

I declare under penalty of perjury, on March 17, 2026, under the laws of the United States of America that the foregoing is true and correct.

Dated: March 17, 2026

*/s/ Steven G. Sklaver*
Steven G. Sklaver